*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Matthew A. ROGERS, Electrician's Mate Third Class**
United States Coast Guard, Appellant

**No. 16-0006**
Crim. App. No. 1391

Argued March 15, 2016—Decided May 16, 2016

Military Judge: Christine N. Cutter

For Appellant: *Lieutenant Philip A. Jones* (argued); *Major Brian Magee.*

For Appellee: *Lieutenant Lars T. Okmark* (argued); *Lieutenant Tereza Z. Ohley* and *Stephen P. McCleary,* Esq. (on brief).

Chief Judge ERDMANN delivered the opinion of the court, in which Judges RYAN and OHLSON, and Chief Judge WHITNEY, joined. Judge STUCKY filed a separate opinion concurring in the result.

———————

Chief Judge ERDMANN delivered the opinion of the court.[1]

Contrary to his pleas, Coast Guard Electrician's Mate Third Class Matthew A. Rogers was convicted by a panel sitting as a general court-martial of, inter alia, two specifications of committing sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012).[2] Rogers was sentenced

---

[1] Chief Judge Frank D. Whitney, United States District Court for the Western District of North Carolina, sat by designation pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

[2] Rogers was also convicted of one specification of conspiracy to obstruct justice, one specification of making a false official statement, one specification of improper use of a military identification card, one specification of violating 18 U.S.C. § 499, and three spec-

to a bad-conduct discharge, ten years of confinement, forfeiture of all pay and allowances, and a reduction to E-1. The convening authority approved the sentence as adjudged. On appeal, the CCA set aside several charges on grounds unrelated to the issue before this court and affirmed the remaining findings and the sentence.

The core of the implied bias test "is the consideration of the public's perception of fairness in having a particular member as part of the court-martial panel." *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015), *reconsideration denied*, 74 M.J. 355 (C.A.A.F. 2015). We granted review in this case to determine whether the military judge abused her discretion when she denied a defense challenge to Commander (CDR) K for implied bias.[3]

We hold that CDR K's uncorrected misunderstanding of a relevant legal issue would cause an objective observer to have substantial doubt about the fairness of Rogers' court-martial panel and that the military judge erred in denying the defense's challenge to CDR K. We therefore reverse the decision of the United States Coast Guard Court of Criminal Appeals (CCA) and the military judge.[4]

## BACKGROUND

Rogers was charged with sexually assaulting M.C. while she was incapable of consenting to a sexual act due to impairment by an intoxicant, a condition that was either known or reasonably should have been known to Rogers. During the members selection process, the military judge conducted general voir dire of all potential members. One of the questions posed by the military judge was, "If my in-

---

ifications of obstruction of justice, in violation of Articles 81, 107, and 134, UCMJ, 10 U.S.C. §§ 881, 907, 934 (2012).

[3] We granted review of the following issue:

> Whether the military judge erred in denying the implied bias challenge against CDR K in light of her various professional and personal experiences with sexual assault.

[4] As we find that CDR K's uncorrected misunderstanding of the law to be dispositive, we need not address Rogers' challenges based on her personal and professional experiences with sexual assault issues.

struction[s] on the law are different from what you believe the law is or should be … will you be able to set aside your own personal beliefs and follow the instructions that I give you?" All of the members answered in the affirmative. The members also agreed to follow the instructions that Rogers was presumed innocent until proven guilty beyond a reasonable doubt and that the burden of proving Rogers' guilt rested with the government.

At the close of general voir dire, CDR K was called back for individual voir dire. In response to defense counsel's questions, CDR K asserted her understanding of the law as to when an intoxicated person could give consent. CDR K stated that if someone was too drunk to remember that they had sex, then they were too drunk to have consented to having sex. CDR K indicated that her understanding of this law came from the training provided by the Coast Guard. CDR K noted, however, that "[i]f the law told me [otherwise] … I'd follow the law." CDR K continued, stating that it "would have to be proven to [her]" that "someone was so drunk that they can't remember anything … [but] then [are] also able to give consent."

At the close of individual voir dire, the military judge placed the following standards for challenges for cause on the record:

> The following applies to all my rulings on challenges for cause. R.C.M. 912 encompasses challenges based on both actual bias and implied bias, even if counsel do not specifically use these terms. The test for actual bias is whether the member's bias will not yield to the evidence presented and the judge's instructions. The existence of actual bias is a question of fact. Accordingly, I must determine whether it is present in a prospective member.
>
> Implied bias exists when, despite a credible disclaimer, most people in the same position as the court member would be prejudiced.
>
> In determining whether implied bias is present, I look at the totality of the circumstances. Implied bias is viewed objectively through the eyes of the public. Implied bias exists if the objective observer would have substantial doubt about the fairness of the accused's court-martial panel.

3

In close cases, military judges are enjoined to liberally grant defense challenges for cause. The liberal grant mandate does not apply to government challenges for cause.

Along with challenges to other members, the defense challenged CDR K for actual and implied bias. The military judge denied the challenge, ruling:

I find that there is no actual bias. The member clearly stated her willingness to yield to the evidence and follow my directions.

As to implied bias, would there be a substantial doubt as to the fairness or impartiality, I believe that her entire statements, taken in context, would not leave a reasonable member of the public, doubt as to the fairness of her impartiality. I listened to her entire answers, also from both counsel. She had every opportunity to say she would not consider my instruction, especially based on alcohol consumption. She did not state that. I believe that she would be a [sic] impartial and fair member, so the challenge for cause is denied.

As the senior ranking member, CDR K was the president of the panel.

During the members' deliberations, CDR K forwarded a question to the military judge asking, "What is the legal definition of 'competent?'" In response, the military judge instructed the members that, "[t]here is no further legal definition of the word 'competent'" and that they must "rely on [their] understanding of the common definition of the word."

## ARGUMENTS

Rogers argues that the military judge should have granted the defense challenge based on CDR K's understanding of an intoxicated person's ability to give consent, because CDR K believed "that if you are so drunk that you can't remember giving consent, then you are too drunk to give consent." Rogers asserts this misunderstanding of the law was never corrected by the military judge, even when CDR K asked for the definition of "competent" during deliberations. Rogers also argues that CDR K's statements that it "would have to be proven to me" that "someone was so drunk they can't remember anything … [but] then [are] also able to give con-

4

sent," effectively shifted the burden of proof on that issue from the government to the defense. Rogers argues that, because of these erroneous beliefs, CDR K's presence on the panel created a high risk that the public would not believe he had received a fair trial.

The government responds that "[a]lthough [CDR K's] statements are not entirely correct, she [did] indicate a willingness to follow the law and … recogni[zed] that what she knew came from her understanding of the training she received." The government further contends that "[o]nce alerted to the fact that she was mistaken, CDR K unequivocally stated that she would be able to follow the instructions given by the military judge."

## STANDARDS OF REVIEW

"This Court's standard of review on a challenge for cause premised on implied bias is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (internal quotation marks omitted) (citations omitted). Under this standard, "[w]e do not expect record dissertations but, rather, a clear signal that the military judge applied the right law." *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002). Indeed, "where the military judge places on the record his analysis and application of the law to the facts, deference is surely warranted." *Id.* As we have previously made clear, however, "[w]e will afford a military judge less deference if an analysis of the implied bias challenge on the record is not provided." *Peters*, 74 M.J. at 34. In cases where less deference is accorded, the analysis logically moves more towards a de novo standard of review.

The military judge appropriately set forth the correct standard for both actual and implied bias. Her analysis of the implied bias claim initially consisted of a conclusory statement that CDR K's responses "would not leave a reasonable member of the public [in] doubt as to the fairness of her impartiality." In support of this conclusion, the military judge noted that she had listened to CDR K's answers and that CDR K "had every opportunity to say she would not consider my instruction, especially based on the alcohol consumption."

That analysis, however, reflects an actual bias analysis which involves a member's willingness to yield to the evidence and follow the judge's directions. Further, it has never been incumbent upon a member to sua sponte assert that he or she would not consider a military judge's instruction and failure of a member to do so does not provide positive support for a finding that the member is fair or impartial. Finally, the military judge stated that CDR K "would be a [sic] impartial and fair member, so the challenge for cause is denied." This again goes to a challenge for actual bias rather than applying the "public perception" standard for implied bias. As the military judge did not perform an implied bias analysis on the record, our review of her analysis will move more toward a de novo standard of review.

## DISCUSSION

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) sets forth the basis for an implied bias challenge. *Peters*, 74 M.J. at 34. "The focus of this rule is on the perception or appearance of fairness of the military justice system." *United States v. Dale*, 42 M.J. 384, 386 (C.A.A.F. 1995). "While actual bias is reviewed through the eyes of the military judge or the court members, implied bias is reviewed under an objective standard, viewed through the eyes of the public." *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001). "In reaching a determination of whether there is implied bias … the totality of the circumstances should be considered." *Peters*, 74 M.J. at 34.

In the present case, M.C. testified that, after a night of heavy drinking, she could not remember meeting or having sex with Rogers. As Rogers' defense was that the sexual contact was consensual, a fundamental question at trial was whether M.C. was capable of consenting to the sexual acts, despite being "blacked out." Under these facts, the members' understanding of the law on intoxication and consent was critical. However, as CDR K stated in voir dire, it was her belief that if someone was too drunk to remember that they had sex, then they were too drunk to consent to having sex.[5]

---

[5] *See* Article 120(g)(8), UCMJ, which provides:

> (A) The term "consent" means a freely given agreement to the conduct at issue by a competent

Moreover, CDR K told the defense during voir dire that "[y]ou'd have to work hard to make me believe that someone was so drunk that they can't remember anything about the evening, that they were then also able to give consent.... That would have to be proven to me." These statements demonstrate a misunderstanding of the law and infer an improper burden shift from the government to the defense.

Although CDR K agreed she would follow the law as instructed by the military judge, she was never instructed or corrected by the military judge on those points. The following exchange occurred when she was questioned by defense counsel during individual voir dire:

> Q: I asked this question on general voir dire, and I think you answered affirmatively, but do you think it's possible for someone to have consensual sex and then just be so intoxicated that they can't remember?

> A: My understanding is that if you are so drunk that you can't remember giving consent, then you are too drunk to give consent. That's my understanding.

> Q: And where does that understanding come from?

> A: That's what our training says. That's what the Coast Guard teaches us in our sexual assault class.

> Q: Would it be hard for you to, I guess, change that perspective, or believe another perspective on that?

> A: *If the law told me that someone could give consent when there were severely intoxicated, I would, you know, I'd follow the law.*

> Q: But your training and your common sense maybe suggests otherwise?

---

person....

   (B) A sleeping, unconscious, or incompetent person cannot consent....

   (C) Lack of consent may be inferred based on the circumstances of the offense. *All the surrounding circumstances are to be considered in determining whether a person gave consent.*

Emphasis added.

A: *My understanding of how the law, as written right now, suggests otherwise.*

Q: So your belief is that the law says that if somebody is so drunk that they can't remember it, that means that they weren't able to give consent?

A: *My understanding is, if the person is so drunk that they are legally, you know, that they are intoxicated enough to not be able to give consent, then -- there is a line that says this person is too intoxicated to give consent.*

*… You'd have to work hard to make me believe that someone was so drunk they can't remember anything about the evening, that they were then also able to give consent. I would have to be -- That would have to be proven to me.*

Emphasis added.

Trial counsel subsequently followed up on that line of questioning:

Q: You mentioned your understanding of the law regarding substantial incapacitation, or incapacitation to the point where one cannot consent.

*Are you able to disregard what you believe now, if the judge instructs you otherwise?*

A: *Yes*

Q: And to follow whatever law the judge --

A: Correct

Emphasis added.

Despite CDR K's strongly held opinion that it was not possible for an intoxicated person to give consent to sexual activity under these circumstances, she testified that she could change her mind if so instructed by the military judge. However, the military judge never issued a curative instruction on this issue at any point in the trial. Further, when CDR K forwarded a question to the military judge asking for the definition of "competent," the military judge instructed the members that there was no further definition available and advised the members to "rely on [their] understanding of the common definition of the word." Not only did the military judge not instruct CDR K to disregard her personally held belief, this response effectively endorsed her erroneous

understanding, both as to whether an intoxicated person can give consent and as to which party had the burden of proof on that issue. As such, under the totality of circumstances of this case, an objective member the public would have substantial doubt about the fairness of having CDR K sit as a member of Rogers' court-martial panel.

## DECISION

The decision of the United States Coast Guard Court of Criminal Appeals regarding the challenge of CDR K is reversed and the findings and sentence affirmed by that court are set aside. A rehearing is authorized.

Judge STUCKY, concurring in the result.

The majority produces the right outcome, but with the wrong means. In a clear case of *actual* bias, it relies on the theory of implied bias to find error in the military judge's failure to exclude panel member CDR K for cause.

At trial, the challenge against CDR K was based on both actual and implied bias. The CCA likewise considered both in rendering its decision. *United States v. Rogers*, No. 1391, slip op. at 2-6 (C.G. Ct. Crim. App. July 8, 2015). When the case reached this court, the issue was recast to be solely one of implied bias—although both theories were mentioned in oral argument. In this posture, it is understandable why the majority relied on implied bias in its decision. I simply disagree.

In this case, CDR K stated that her views of the law—that an individual cannot consent to sexual activity if intoxicated and that it "would have to be proven to [her]" that someone who lacked memories of a sexual encounter could have consented—would yield to the military judge's instructions if the two were incompatible. And CDR K's understanding of the law of consent was certainly incompatible with its actual construction. But the military judge never provided an instruction that would divest CDR K of her erroneous views.

Although the presence of actual bias "rests heavily on the sincerity of an individual's statement that he or she can remain impartial," *United States v. Nash*, 71 M.J. 83, 88 (2012), the absence of any curative instruction on the part of the military judge rendered CDR K's assertion in this regard worthless. Based on her statements on the law of consent and the facts of the case—an alleged sexual offense perpetrated against an intoxicated individual—CDR K essentially "formed or expressed a definite opinion as to the guilt or innocence of the accused as to [the] offense charged." Rule for Courts-Martial (R.C.M.) 912(f)(1)(M). This expression evinced a "personal bias which [did] not yield to the military judge's instructions and the evidence presented at trial" because no pertinent instructions were given, *Nash*, 71 M.J. at 88; a clear case of *actual* bias. Accordingly, I agree with the majority's ultimate conclusion that the military judge erred

in refusing to exclude CDR K from the panel for cause, but disagree with the reasoning it uses to arrive at this result.