# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PENLAND, HAYES, and MORRIS
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant RYAN C. THOMAS**
**United States Army, Appellant**

ARMY 20210662

Headquarters, Fort Stewart
G. Bret Batdorff, Military Judge (arraignment)
Alyssa S. Adams, Military Judge (trial)
Colonel Joseph M. Fairfield, Staff Judge Advocate

For Appellant: Captain Kevin T. Todorow, JA (argued); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Kevin T. Todorow, JA (on brief, on brief on specified issue, on reply brief on specified issue).

For Appellee: Captain Alex J. Berkun, JA (argued); Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Kalin P. Schlueter, JA; Captain Alex J. Berkun, JA (on brief, on brief on specified issue).

29 March 2024

---
SUMMARY DISPOSITION
---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

HAYES, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of failing to obey a general regulation and one specification of adultery, in violation of Articles 92 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892 and 934. Contrary to his pleas, a panel consisting of officer and enlisted members found appellant guilty of two specifications of cruelty and maltreatment and two specifications of sexual assault of a child, in violation of Articles 93 and 120b, UCMJ, 10 U.S.C. §§ 893 and 920b.

The panel sentenced appellant to a dishonorable discharge and confinement for eight years.

We review the case under Article 66, UCMJ. Appellant raises three assignments of error. This court specified an additional issue and heard oral argument on the first two assigned errors and the specified issue.[1] The second assigned error and the specified issue merit discussion, but no relief. For the reasons discussed below, we affirm the findings and sentence.

## LAW AND DISCUSSION

### *Prior Consistent Statements*

At trial, Miss ▮ testified that appellant raped her once and sexually assaulted her on three occasions. On cross-examination, appellant's counsel extensively attacked Miss ▮'s credibility based on a number of inconsistencies drawn from her initial reports to a social worker, a subsequent report to Army Criminal Investigation Command (CID), and more recent interviews conducted by government and defense counsel.

The government sought to counter the impeachment by introducing Miss ▮'s forensic interview conducted the day after one alleged incident under Military Rule of Evidence (Mil. R. Evid.) 801(d)(1)(B)(ii). The government pointed to specific instances on cross-examination in which Miss ▮'s testimony was challenged as the product of a faulty memory or a general lack of credibility as a witness. Further, the government indicated how the prior consistent statements in the forensic interview were relevant to rehabilitate Miss ▮'s testimony on those bases of attack.

Finding appellant's cross-examination had suggested a recent motive to fabricate *and* had challenged the accuracy of Miss ▮'s memory and her credibility as a witness, the military judge admitted select portions of the forensic interview under *both* Mil. R. Evid. 801(d)(1)(B)(i) and Mil. R. Evid. 801(d)(1)(B)(ii). The military judge did not precisely identify which prior consistent statements in the interview were admitted under Mil. R. Evid. 801(d)(1)(B)(i) to rebut a charge of recent fabrication, or which prior consistent statements were admitted under Mil. R. Evid. 801(d)(1)(B)(ii) to rehabilitate Miss ▮'s testimony when attacked due to faulty memory or general lack of credibility as a witness.

---

[1] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

This court reviews a military judge's decision to admit evidence for an abuse of discretion. *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019). Prior inconsistent statements are admissible under Mil. R. Evid. 801(d)(1)(B) provided (1) the declarant testifies; (2) the declarant is subject to cross-examination about the prior statement; (3) the prior statement is consistent with the declarant's testimony; and the statement is offered either: (4) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying, or (5) to rehabilitate the declarant's testimony as a witness when attacked on another ground. Mil. R. Evid. 801(d)(1)(B).

*United States v. Finch* clarified two additional requirements for prior consistent statements to be admitted substantively under Mil. R. Evid. 801(d)(1)(B)(ii). 79 M.J. 389, 396 (C.A.A.F. 2020). The declarant's credibility as a witness must have been attacked on another ground *other than* the ones listed in subsection (i), and the prior consistent statement must actually be relevant to rehabilitate the witness's credibility *on the basis on which he or she was attacked. Id.* The military judge must make a determination that *each* prior consistent statement is relevant to rehabilitate the witness on one of the grounds cited in Mil. R. Evid. 801(d)(1)(B). *Id.* (emphasis added).

Unlike in *Finch*, the military judge did not admit the entire prior statement without determining if and how each portion qualified as a prior consistent statement. Here, she allowed three short clips of the videotaped interview she determined contained prior consistent statements relevant to rehabilitate the witness under one of the grounds cited in Mil. R. Evid. 801(d)(1)(B). In each of the first two clips, Miss ██ made two statements. In the last clip, she made eleven. Each one was consistent with her trial testimony and rebutted either her lack of memory or her general credibility as a truthful witness under Mil. R. Evid. 801(d)(1)(B)(ii) or served to refute the motive to fabricate under Mil. R. Evid. 801(d)(1)(B)(i).

While the trial judge did not parse out each individual statement in her ruling, the record is clear she deliberately identified the statements she found to be both consistent and relevant to rehabilitate the witness on the basis for which each portion of the witness's testimony was attacked. No one piece of evidence was clearly admitted under both Mil. R. Evid. 801(d)(1)(B)(i) and (ii). Therefore, we do not find she abused her discretion when she admitted the relevant prior consistent statements from the forensic interview.

3

THOMAS — ARMY 20210662

*The Batson Challenge*

This Court specified the issue of whether the military judge abused her discretion when denying appellant's *Batson* challenge to Major (MAJ) ██. *Batson v. Kentucky*, 476 U.S. 79 (1986). This court reviews a decision denying a *Batson* challenge for abuse of discretion. *United States v. Williams*, 44 M.J. 482, 485 (C.A.A.F. 1996).

The Court of Appeals for the Armed Forces (CAAF) "adopted a per se application of *Batson*, placing the burden on the challenging party, upon timely objection, to provide a race-neutral explanation for the challenge." *United States v. Hurn*, 58 M.J. 199, 200 n.2 (C.A.A.F. 2003) (citing *United States v. Moore*, 28 M.J. 366, 368 (C.M.A. 1989). "A race neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Unlike the lower standard in civilian courts, in military courts-martial the explanation must be a "reasonable, racially neutral explanation." *United States v. Tulloch*, 47 M.J. 283, at 287 (C.A.A.F. 1997), *United States v. Moore*, 26 M.J. 692, 701 (A.C.M.R. 1982).

It is "the ultimate responsibility of the military judge to determine the existence of purposeful discrimination on the part of trial counsel." *United States v. Greene*, 36 M.J. 274, 281 (C.M.A. 1993). The military judge "must review the record and weigh trial counsel's credibility" before making "a factual determination regarding the presence or absence of purposeful discrimination[.]" *Id.* "The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Hernandez*, 500 U.S. at 365.

Despite MAJ ██ being one of several members of the venire who had been the target of racial epithets, the government made no challenges for cause. MAJ ██ was the only one peremptorily challenged. When appellant requested a race-neutral explanation for MAJ ██'s challenge, trial counsel responded by distinguishing MAJ ██'s responses from the other prospective members who had been subjected to racial epithets. Trial counsel noted MAJ ██ appeared to be the most unaffected by such slurs unless they impacted his professional life. In his personal life, MAJ ██ said he preferred to "ignore it and move on." This sentiment appeared to be supported by the life experiences MAJ ██ discussed during individual voir dire.

Similar to the concerns expressed by the prosecutor in *Hernandez* about the veniremen's specific responses and demeanor, trial counsel noted that MAJ ██'s body language and the sentiments he expressed above appeared to minimize the impact of racist language and presented a concern that MAJ ██

4

would expect others to react with the same level of resilience that he did when confronted with racial epithets. *See generally, Hernandez*, 500 U.S. at 360. Essentially, the government assessed MAJ ███ as someone who would not appreciate the severity of a number of the specifications he would be required to adjudicate. This concern that MAJ ███ may not give certain charged offenses the weight or scrutiny they were due was both plausible and irrespective of MAJ ███'s race. "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Hernandez*, 500 U.S. 369 (citing Anderson v. Bessemer City, 470 U.S. 564, 574 (1985). Like the court in *Hernandez*, "the trial court took a permissible view of the evidence in crediting the prosecutor's explanation." *Id.*

While MAJ ███'s race might have conceivably factored into trial counsel's challenge in some way, the law recognizes the trial judge is in the best position to make that determination, and we rely on her assessment of trial counsel's credibility. While his motivations or personal beliefs were unknown to the trial judge, and unknowable to us, his explanation when challenged was plausible and the trial judge, able to observe trial counsel's demeanor and sincerity, concluded the provided explanation was racially neutral. Her finding, while lacking analysis, was not an abuse of discretion.

The findings of guilty and the sentence are AFFIRMED.

Judge MORRIS concurs.

Senior Judge PENLAND, dissenting:

I agree with my colleagues' brief treatment and resolution of Appellant's assigned errors. I also join their judgment that appellant's personally-raised *Grostefon* matters lack merit. But for my following concerns, I would vote to summarily affirm the findings and sentence.

I respectfully dissent, because in my view the military judge erred in denying appellant's *Batson* challenge under current military justice standards. I also believe this case demonstrates it is time to re-examine and change the standards.

We do not know much about the panel members' races in this case; we rarely do. However, considering the circumstances alleged, including racist language about African-Americans, the parties reasonably asked questions about the panel members' experience with racial epithets. This was appropriate under *United States v. Ramirez*, _ M.J. _, 2024 CAAF LEXIS 122* (C.A.A.F. 29 February 2024). When three members indicated they had been addressed with racist language, the parties asked them individual questions. MAJ ███ whose race the parties apparently agree is African-American, was asked the most specific questions (the other two panel

members were not African-American). He disclosed racist treatment as a youngster growing up in Germany, and as a Soldier serving in the Army. He further indicated he would objectively evaluate the circumstances surrounding which an accused allegedly made racist comments, rather than automatically perceive such comments as unlawful.

When the prosecution peremptorily challenged MAJ ███ the defense objected under *Batson*. The military judge asked the prosecution for a race-neutral reason, and the prosecution responded with the following: concern that MAJ ███ would not take racist language seriously enough, and instead that he would reason if he could handle it, others could also; reasoning that it would make no sense for the prosecution to purposefully exclude an African-American panel member in light of the alleged misconduct;[2] MAJ ███s personal resilience; and MAJ ███s body language. The defense disputed these justifications, but the military judge granted the peremptory challenge, stating, "I've considered both of the positions and I find that the government has offered a racially neutral reason for their peremptory challenge, so I'm going to grant that challenge."

The record does not indicate which of the prosecution's responses prompted the military judge's brief ruling. In my view, the first three reinforced race – the second one explicitly so. On this record, it is fair to describe MAJ ███'s race and his outlook on racist language as inextricable. It is equally fair to say the record does not support the government's remaining objection to MAJ ███'s "body language" – the record discloses nothing about it. None of the government's stated grounds were reasonably race neutral.

This case requires us to consider MAJ ███'s *independent* constitutional right not to be excluded from the panel based on his race. *J.E.B. v. Ala. ex. rel. T.B.*, 511 U.S. 127 (1994), ('we have recognized that whether the trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice."). (See *Powers v. Ohio*, 499 U.S. 400 (1991); *United States v. Mencias*, 83 M.J. 723 (N.M. Ct. Crim. App. 2023)). I am concerned about how MAJ ███ might have reacted when told of excusal. I hope he asked why.

---

[2] The government said here, "[T]his is a case where the accused is white and he's being accused of making negative racial remarks about a black person. So, it doesn't really make sense that the government would have a racial reason to try to remove African-American members of the panel."

This reflected a misunderstanding of the law, for it is never acceptable, and it never "make[s] sense", to include or exclude a panel member based on race. *United States v. Jeter*, 84 M.J. 68 (C.A.A.F. 2023) (quoting *Batson*, 476 U.S. at 87, "[a] person's race simply is unrelated to [their] fitness as a juror.").

Would he, or an impartial observer, have reason to believe his race was the determining factor? Would the prosecution's proffers diminish that concern, or increase it? Did MAJ ██ say anything to contradict the convening authority's determination that he was "best qualified" under Article 25 to perform this duty?

These concerns further cause me to question what appear to be internal – and unintentional - inconsistencies in framing problems and standards of review for panel member challenges. To make it plain, in my view our current standards require reversal under these facts; however, and with all respect for judicial restraint, it is necessary to change the status quo.

If this case involved the more general problem of implied panel member bias where a number of potential issues may spark a causal challenge, the law would currently require closer scrutiny.[3] However, equally compelling interests apply to the more specific problem of racial bias in peremptory challenges – in the context of military justice, the Fifth Amendment conveys the interests bearing on both. With implied bias, we consider the prospect of an outside observer having reasonable doubts about a panel member's impartiality.[4] In the context of racial bias, we should be equally concerned about the prospect that one might reasonably believe race was a motivating factor for excusal or inclusion. And, when we grant limited deference to trial judges on questions of implied bias, we should be equally exacting on questions of racial bias. I firmly believe these disparate problem statements and standards of review are unintentional – they seem to have developed independent of one another according to the unique facts of various cases. Considering the issues presented here, we can and should adopt a more equal approach.

I am confident beyond a reasonable doubt that the findings and sentence would be the same if MAJ ██ had served on the panel. Reversal would give appellant a significant-if-temporary reprieve, for *his* rights were held intact and suffered no prejudice; the law very rarely yields such an outcome. However, the Constitution guarantees equal access to the law – including access to participate as a panel member. Where a case does not do that, it should be tried again.

---

[3] "This Court's standard of review on a challenge for cause premised on implied bias is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016) (citing *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010)); *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017).

[4] The contexts are distinct – peremptory versus causal – but that does not warrant a different principle.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court