*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

## UNITED STATES
Appellee

**v.**

## Nixon KEAGO, Midshipman
United States Navy, Appellant

**No. 23-0021**
Crim. App. No. 202100008

Argued October 12, 2023—Decided May 9, 2024

Military Judges: Ryan J. Stormer
(arraignment, motions), Aaron C. Rugh (trial),
and Angela J. Tang (entry of judgment)

For Appellant: *Lieutenant Colonel Matthew E. Neely*, USMC (argued); *Lieutenant Megan E. Horst*, JAGC, USN (on brief).

For Appellee: *Captain Tyler W. Blair*, USMC (argued); *Colonel Joseph M. Jennings*, USMC, *Lieutenant Commander Paul S. LaPlante*, JAGC, USN, and *Brian K. Keller*, Esq. (on brief).

Amicus Curiae in Support of Neither Party: *Brenner M. Fissell*, Esq., *Franklin D. Rosenblatt*, Esq., *Rachel E. VanLandingham*, Esq., and *James A. Young*, Esq. (on behalf of the National Institute of Military Justice) (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON and Judge JOHNSON joined. Judge SPARKS filed a separate opinion, concurring in part and dissenting in part. Judge MAGGS filed a separate dissenting opinion.
_____

Judge HARDY delivered the opinion of the Court.[1]

The Government charged Appellant with multiple offenses related to his alleged sexual assaults of three victims. At the panel selection phase of his general court-martial, Appellant challenged fourteen potential panel members for actual and implied bias. The military judge granted six of Appellant's challenges but denied the other eight. Before this Court, Appellant argues that the military judge erred in denying both his actual bias and implied bias challenges against three of the panel members. We first hold that the military judge did not abuse his discretion in denying Appellant's challenges for actual bias. We also hold, however, that the voir dire responses of two of the members presented close cases of implied bias. Because the liberal grant mandate requires military judges to excuse potential panel members in close cases, the military judge erred by denying those two challenges. Accordingly, the judgment of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) is reversed.

## I. Background

### A. Procedural History

The Government charged Appellant, a midshipman at the United States Naval Academy, with specifications of attempted sexual assault, sexual assault, burglary, and obstruction of justice in violation of Articles 80, 120, 129, and 131b, Uniform Code of Military Justice (UCMJ),[2] related to alleged sexual assaults of three of Appellant's fellow

---

[1] The Court heard oral argument in this case at the U.S. Naval Undersea Museum, Keyport, Washington, as part of the Court's "Project Outreach." Project Outreach seeks to expand awareness of the military justice appellate process by taking appellate hearings to military bases around the country. We thank the participants.

[2] More specifically, the Government charged Appellant with violations of Articles 80, 129, and 131b, UCMJ, 10 U.S.C. §§ 880, 929, 931b (2018), and Articles 120, UCMJ, 10 U.S.C. § 920 (2012 & Supp. IV 2013-2017), and Article 129, UCMJ, 10 U.S.C. § 929 (2012).

midshipmen. During panel selection, Appellant challenged fourteen potential panel members for both actual and implied bias. The military judge granted six of Appellant's challenges but denied the other eight. Before the NMCCA, Appellant argued that the military judge erred in denying Appellant's challenges against four of his panel members. *United States v. Keago*, No. NMCCA 202100008, 2022 CCA LEXIS 397, at *9-12, 2022 WL 2437886, at *3-5 (N-M. Ct. Crim. App. July 5, 2022) (per curiam) (unpublished). The NMCCA disagreed. *Id*. at *15-16, 2022 WL 2437886, at *6. Upon Appellant's petition, we granted review to determine whether the military judge erred in denying actual and implied bias challenges against three of Appellant's panel members: LCDR Charlie, LCDR Mike, and LT Sierra.[3] *United States v. Keago*, 83 M.J. 252, 252-53 (C.A.A.F. 2023) (order granting review).

### B. Appellant's Actual and Implied Bias Challenges

After the convening authority detailed the potential panel members to Appellant's court-martial, they completed the Northern Judicial Circuit's standard member court-martial questionnaire in writing. To minimize exposure to COVID-19, the military judge presiding over Appellant's court-martial declined to conduct group voir dire and instead ordered the potential panel members to complete a supplemental questionnaire in writing. Prior to trial, the military judge conducted an in-person voir dire session during which the military judge, trial counsel, and defense counsel had the opportunity to ask additional questions of individual members. The statements that formed the basis of Appellant's challenges were made by the challenged panel members either in their questionnaire responses or during the individual voir dire.

### 1. LCDR Charlie

Appellant challenged LCDR Charlie on multiple grounds, asserting his statements and background

---

[3] To preserve the panel members' privacy, this opinion presents their names as pseudonyms.

demonstrated both actual and implied bias. Appellant pointed primarily to: (1) statements LCDR Charlie made about the presumption of innocence and Appellant's right to remain silent; (2) LCDR Charlie's service as a fleet mentor for the Naval Academy's Sexual Assault Prevention Response Program and comments he made about the problem of sexual assault in the military; and (3) the fact that LCDR Charlie's mother had once been the victim of a kidnapping and attempted rape. Our analysis in this opinion focuses on the first of these categories.

With respect to the presumption of innocence, Appellant argues that LCDR Charlie's answers during voir dire established that—rather than accepting that Appellant was innocent until proven guilty—LCDR Charlie believed the Government had already proven part of its case. For example, on the supplemental questionnaire, LCDR Charlie stated: "The fact that there are charges suggests that something happened. I understand that false sexual assault accusations don't make it very far under scrutiny." He also expressed his belief that "since we are at the court-martial stage, a flimsy or easily proven[]false accusation would have been dropped by now." During the in-person voir dire, LCDR Charlie further explained his view stating that "the fact that you get through charges in a proceeding like this means that it is not a simple he said/she said . . . I feel like something had to have happened."

With respect to Appellant's right to remain silent, Appellant argues that LCDR Charlie's statements demonstrated that—despite Appellant's constitutional right not to testify in his own defense—LCDR Charlie would consider Appellant's decision not to do so during LCDR Charlie's deliberations. LCDR Charlie repeatedly expressed his desire to hear Appellant's testimony and stated that Appellant's failure to put on a case would be "self-defeating." He also agreed that Appellant "should testify to prove his innocence," and that "it would help to see some other sort of evidence or witness to corroborate his innocence." Even when LCDR Charlie agreed that he would not hold

Appellant's refusal to testify against him, he still stated that it would "come to mind that he didn't."

## 2. LCDR Mike

Appellant challenged LCDR Mike on the grounds that her statements about consent and victim credibility demonstrated her actual and implied bias. With respect to consent, Appellant argued that LCDR Mike's answers suggested that she would not follow the law because she expressed the view that consent for a sexual encounter must be clear and unequivocal. LCDR Mike further stated that she could not imagine a sexual encounter where one party honestly believed there was consent, but the other party did not consent. With respect to victim credibility, Appellant argued that LCDR Mike's statements suggested that she would be biased in favor of the prosecution. LCDR Mike stated that "we should err on the side of believing rather than on the side of disbelieving" alleged sexual assault victims, and that as a panel member she should "believe over disbelie[ve]" someone who makes a claim of sexual assault. Appellant further noted that when given the chance to respond to Appellant's challenge of LCDR Mike, the Government offered "no argument" in opposition.

## 3. LT Sierra

Appellant challenged LT Sierra for actual and implied bias based on his wife's experience as a victim of sexual assault and LT Sierra's negative views about sexual assault. LT Sierra testified that his wife was raped ten to fifteen years prior by a drunk ex-boyfriend in high school. The rape was never reported to law enforcement. Upon learning of the incident, LT Sierra "didn't necessarily do a deep dive into the details and things like that," but he did help his wife move through the traumatic event by providing emotional support. LT Sierra stated that he had always found sex crimes to be distasteful and cringeworthy, but learning of his wife's rape strengthened those feelings and made them "more personal."

## II. Governing Law

" 'As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel.' " *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (quoting *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001)). The President has operationalized this right through Rule for Courts-Martial (R.C.M.) 912(f)(1), which authorizes specific grounds for excusing panel members for cause. As relevant here, R.C.M. 912(f)(1)(N) provides that a servicemember "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." We have held that this language encompasses the two types of bias: actual and implied. *United States v. Miles*, 58 M.J. 192, 194 (C.A.A.F. 2003).

### A. Actual Bias

Actual bias is known as "bias in fact." *United States v. Hennis*, 79 M.J. 370, 384 (C.A.A.F. 2020) (internal quotation marks omitted) (citation omitted). "It is 'the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.' " *Id.* (quoting *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007)). The test for actual bias is whether a member's personal bias "will . . . yield to the military judge's instructions and the evidence presented at trial." *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citing *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987)). An actual bias challenge is evaluated based on the totality of the circumstances. *United States v. Richardson*, 61 M.J. 113, 118 (C.A.A.F. 2005) (citing *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004)). "Because a challenge based on actual bias involves judgments regarding credibility, and because 'the military judge has an opportunity to observe the demeanor of court members and assess their credibility during voir dire,' a military judge's ruling on actual bias is afforded great deference." *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F.1996)). Accordingly, we review a military judge's

actual bias determinations for an abuse of discretion. *Hennis*, 79 M.J. at 384.

### B. Implied Bias

Implied bias is " 'bias attributable in law to the prospective juror regardless of actual partiality.' " *Id.* at 385 (quoting *United States v. Wood*, 299 U.S. 123, 134 (1936)). The test for implied bias is "whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high." *United States v. Woods*, 74 M.J. 238, 243-44 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). In asking that question, courts consider "the totality of the circumstances, and assume the public [is] familiar with the unique structure of the military justice system." *Id.* at 244. Because the test for implied bias is an objective one that is only partially based on the military judge's credibility determinations and findings of fact, military appellate courts "review implied bias challenges pursuant to a standard that is 'less deferential than abuse of discretion, but more deferential than de novo review.' " *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015) (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006)).

### C. The Liberal Grant Mandate

Military judges must err on the side of granting defense challenges for cause.[4] *Clay*, 64 M.J. at 277. This "liberal grant mandate" recognizes that "the interests of justice are best served by addressing potential member issues at the outset of judicial proceedings," and is intended to address "certain unique elements in the military justice system including limited peremptory rights and the manner of appointment of court-martial members that presents perils that are not encountered elsewhere." *Peters*, 74 M.J. at 34 (alteration in original omitted) (internal quotation marks omitted) (citations omitted). This Court has held that,

---

[4] This Court has found "no basis for application" of the liberal grant mandate to the Government's challenges for cause. *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005).

under the liberal grant mandate, if the military judge finds an implied bias challenge to be a close question, the challenge should be granted. *Id.*

## III. Discussion

Appellant argues that the military judge erred by denying the actual and implied challenges against LCDR Charlie, LCDR Mike, and LT Sierra. We address each argument in turn.

### A. Actual Bias

Considering the deferential standard of review, we need not linger long on Appellant's actual bias challenges. With respect to each challenged member, the military judge correctly cited the relevant actual bias law, made express findings of fact that were not clearly erroneous, recognized the liberal grant mandate, and placed his reasoning on the record. Considering the "great deference" due to military judges with respect to their actual bias determinations, *Clay*, 64 M.J. at 276, we hold that the military judge did not abuse his discretion when he denied Appellant's challenges for actual bias.

### B. Implied Bias

Appellant also argues that the military judge erred in concluding that LCDR Charlie, LCDR Mike, and LT Sierra should not be excused based on their implied biases. Based on the specific facts presented in this case, we hold that LCDR Charlie and LCDR Mike presented a close case of implied bias and should have been excused under the liberal grant mandate.

#### 1. Standard of Review

As stated above, we review a military judge's implied bias analysis under a standard of review "that is less deferential than abuse of discretion, but more deferential than de novo review." *Peters*, 74 M.J. at 33 (internal quotation marks omitted) (citations omitted). We acknowledge that this Court's implied bias case law has not been entirely clear about how appellate courts should apply this somewhat ambiguous standard. We have said that while "it is

not required for a military judge to place his or her implied bias analysis on the record, doing so is highly favored and warrants increased deference from appellate courts." *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (citing *Clay*, 64 M.J. at 277). We have also said that when a military judge fails to conduct an implied bias analysis, the standard of review shifts toward de novo. *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016). Further complicating the issue is how the liberal grant mandate factors into this review.

We interpret our case law as dictating a sliding standard of appellate review for implied bias challenges that falls somewhere on a spectrum between de novo and abuse of discretion based on the specific facts of the case. A military judge who cites the correct law and explains his implied bias reasoning on the record will receive greater deference (closer to the abuse of discretion standard), while a military judge who fails to do so will receive less deference (closer to the de novo standard). Accordingly, the more reasoning military judges provide, the more deference they will receive. *Rogers*, 75 M.J. at 273.

Furthermore, we reaffirm the Court's statements about the applicability of the liberal grant mandate. In *Clay*, the Court held that "in close cases military judges are *enjoined* to liberally grant challenges for cause." 64 M.J. at 277 (emphasis added). Then, in *Peters*, we made clear that military judges are "*mandated* to err on the side of granting a challenge," and further explained that this means that "if after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted." 74 M.J. at 34 (emphasis added). Based on this language, military judges retain their discretion to determine whether a challenge for cause constitutes a "close case" of bias. However, when a case is close, the

liberal grant mandate prohibits military judges from deny-ing the challenge.[5]

Reviewing the record in this case, the military judge be-gan his ruling on Appellant's challenges on strong ground. He both accurately recited the law of implied bias, and ex-plicitly stated that he had applied the liberal grant man-date when analyzing Appellant's actual and implied bias challenges to each of the three members. This, however, was the extent of reasoning presented by the military judge with respect to the implied bias challenges. Although the military judge provided thorough explanations for his deci-sion on Appellant's *actual* bias challenges, he provided no explanations for his denial of Appellant's *implied* bias chal-lenges. As noted above, the tests for actual bias and implied bias are not the same. The military judge provided no "analysis as to why, given the specific factors in this case, the balance tipped in favor of denying the challenge." *Pe-ters*, 74 M.J. at 35. Without the benefit of knowing "how, and with what nuance, the military judge applied the prin-ciples embodied in the implied bias doctrine," *Clay*, 64 M.J. at 278, our standard of review moves significantly closer to de novo. *See Rogers*, 75 M.J. at 273 ("As the military judge did not perform an implied bias analysis on the record, our review of her analysis will move more toward a de novo standard of review.").

---

[5] We recognize that some cases from this Court and our pre-decessor suggest a more limited application of the liberal grant mandate. *See, e.g.*, *United States v. Townsend*, 65 M.J. 460, 464 (C.A.A.F. 2008) (stating that a military judge's decision to apply the liberal grant mandate will only be overturned if he clearly abuses his discretion); *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993) (holding that although trial courts must grant challenges for cause liberally, appellate courts should only re-verse a military judge's ruling on a challenge for cause for a clear abuse of discretion). We view those cases to be of little preceden-tial value after the Court's recent decisions in *Peters* and *Clay*.

## 2. LCDR Charlie and LCDR Mike Present
## Close Cases of Implied Bias

Applying a less deferential standard of review, several factors lead us to conclude that the two challenged members presented a close case of implied bias. Although we expressly discuss only the most concerning issues raised by Appellant with respect to LCDR Charlie and LCDR Mike, the other issues presented by Appellant contribute to the totality of the circumstances we considered in determining that Appellant's implied bias challenges should have been granted under the liberal grant mandate.

First, LCDR Charlie appeared to enter the court-martial—prior to the presentation of any evidence—believing that the Government had already established some portion of its case against Appellant. LCDR Charlie stated that "a flimsy or easily proven[]false accusation would have been dropped by now," and that "the fact that you get through charges in a proceeding like this means that it is not a simple he said/she said . . . I feel like something had to have happened." LCDR Charlie also made concerning comments about Appellant's right to remain silent, noting that he would like to see Appellant testify to prove his innocence, and that he would think about a refusal to testify during panel deliberations. In addition to these statements, towards the end of the defense questioning and after reassuring the parties that he understood Appellant did not have to testify, LCDR Charlie still stated, "I would like to hear the Defense's side of the story." A reasonable member of the public might wonder how Appellant could receive a fair trial from LCDR Charlie, who appeared to be confused about Appellant's presumption of innocence and right to remain silent.

In response, the Government notes that LCDR Charlie also made other statements that are inconsistent with or at least mitigate these statements. This is true, but those conflicting statements do not convince us that it is not a close case whether LCDR Charlie "convincingly demonstrated a departure from" his initial view on the presumption of innocence and the right to remain silent. *Woods,* 74

M.J. at 244. The Government also points to Appellant's answers to boilerplate questions in the supplemental questionnaire as proof that LCDR Charlie understood the Government's burden of proof and that he followed all the military judge's instructions. But we cannot treat these generic responses as dispositively establishing that LCDR Charlie understood the law. *See Clay*, 64 M.J. at 278 (concluding that the military judge erred in denying the appellant's implied bias challenge even though the challenged member "stated any number of times that he presumed Appellant was innocent and would look at the evidence objectively"); *Rogers*, 75 M.J. at 274-75 (concluding that the military judge erred in denying the appellant's implied bias challenge even though the challenged member had stated that she would be able to follow the instructions given by the military judge and the law). As this Court has noted before, a potential panel member's predictable answers to leading questions are not enough to rebut the possibility of bias, especially when some of those questions lead to more problematic responses. *Nash*, 71 M.J. at 89.

Second, LCDR Mike's comments suggested that she did not believe that mistake of fact was a viable defense to a sexual assault charge. During voir dire, LCDR Mike agreed that a person "needs to essentially give sort of clear and unequivocal consent for sexual activity." When questioned further by trial counsel, LCDR Mike stated that she could not imagine a situation where "one person is not consenting but the other person honestly believes that they are consenting." Given the facts of this case, a reasonable member of the public might be concerned that Appellant—who asserted a mistake of fact defense—may not receive a fair trial from a member who repeatedly expressed doubt about the legitimacy of such a defense. This concern would only be exacerbated by the fact that the Government offered "no argument" in opposition to Appellant's challenge to LCDR Mike's participation on the panel.

In our view, LCDR Charlie's and LCDR Mike's statements—which suggested critical misunderstandings about Appellant's fundamental constitutional rights—establish

that it was at least a close case whether a reasonable member of the public would have significant questions about the fairness of Appellant's panel. *See Rogers*, 75 M.J. at 271 (holding that a member's "uncorrected misunderstanding of a relevant legal issue would cause an objective observer to have substantial doubt about the fairness of [the accused's] court-martial panel"). We acknowledge that what might appear as potential bias based on a "cold appellate record," might not have appeared so close when witnessed by the "military judge observing members in person and asking the critical questions that might fill any implied bias gaps left by counsel." *Clay*, 64 M.J. at 277. But here, the military judge never asked any clarifying questions or offered any corrections about these issues that might have filled the gaps left by trial and defense counsel. Without the benefit of the military judge's reasoning and applying a standard of review closer to de novo, we conclude that Appellant's challenges presented a close case of implied bias. Because military judges are required to apply the liberal grant mandate and excuse members in close cases, the military judge erred by failing to do so.

## IV. Decision

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Navy. A rehearing is authorized.

Judge SPARKS, concurring in part and dissenting in part.

As an initial matter, I agree with the Court that the military judge did not err in denying the actual bias challenges. However, the Court has applied a standard of review for implied bias challenges that has long been unhelpful and is itself in need of review. Moreover, its application here has led the Court to conclude, erroneously in my view, that the military judge erred by denying the challenges at issue in this case.

### I. Implied Bias Standard of Review

Traditionally, this Court's standard of review for a challenge for cause premised on implied bias is "less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015) (internal quotation marks omitted) (citation omitted). This is a vague and confusing standard found nowhere else in the law that does not provide the precision needed for proper appellate review. Because our implied bias standard of review is too vague to be workable, what has developed is a subjective "I know it when I see it" approach to implied bias review.

Further confusing matters, although a military judge is not obligated to place his or her implied bias analysis on the record, doing so "warrants increased deference from appellate courts." *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017). Conversely, a military judge who fails to place sufficient reasoning on the record regarding his or her implied bias ruling is given less deference, and " 'the analysis logically moves more towards a de novo standard of review.' " *Id.* at 96 (quoting *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016)). This sliding scale standard of deference does not inform a military judge what he or she must put on the record to receive increased deference.

Here, the military judge stated that he considered the liberal grant mandate but then applied no additional analysis to his implied bias rulings. The majority's opinion holds that the military judge's implied bias rulings were not sufficiently detailed to receive increased deference. The majority appears to be discarding the widely held

presumption that the military judge knows the law and will apply it absent some indication in the record. *See United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (holding that "[m]ilitary judges are presumed to know the law and to follow it absent clear evidence to the contrary").

We should admit that we are not affording any discretion to the military judge and review implied bias conclusions de novo. This makes sense as our Court has explained:

> Implied bias exists when most people in the same position as the court member would be prejudiced. To test whether there is substantial doubt about the fairness of the trial, we evaluate implied bias objectively, through the eyes of the public, reviewing the perception or appearance of fairness of the military justice system. This review is based on the "totality of the circumstances."

*United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (internal quotation marks omitted) (citations omitted). An appellate court is in as good or better position than a military judge to determine how the public would view the appearance of the members' impartiality. A de novo standard of review would provide clarity and replace the confusing "more deference" versus "less deference" or "more than de novo but less than abuse of discretion" standards military appellate courts currently use.

I grudgingly accept that the Court is not yet prepared to accept my views on the implied bias standard of review, but even under the current framework, I find that these are not close cases, and a reasonable, objective, and fully informed member of the public would not have an adverse or unfavorable view of the military justice system regarding the challenged members in this case.

## II. Application

### a. Lieutenant Commander (LCDR) Charlie

Appellant argues that an informed member of the public "might well ask why the military judge retained LCDR [Charlie]" when he described his mother's attempted rape as " 'indelible' " in light of his strong belief that victims have had to fight against institutional apathy to receive

2

justice and his assumption that " 'something had to have happened' " for this case to be at trial. I disagree, as a fully informed member of the public would be aware that "the Court observed no particular emotional reaction to [LCDR Charlie's] recitation of having learned that his mother was kidnapped by someone somewhere in 1975." The military judge did not err in declining to find implied bias, given that the " 'indelible' " conversation with LCDR Charlie's mother was about an event five decades before, LCDR Charlie lacked emotion and details about the event, and given the lack of similarity between it and the charged offenses—sexual assaults of multiple women in their sleep. Further, a fully informed member of the public would understand that the military judge found that LCDR Charlie's statement that "something had to have happened" for the court-martial to take place was a literal answer and did not indicate he believed something illegal must have happened. Under these facts, LCDR Charlie's inclusion on the panel would not cause the public to perceive unfairness in the military justice system. Accordingly, the military judge did not err when he declined to excuse LCDR Charlie based on implied bias.

### b. LCDR Mike

Appellant argues that LCDR Mike's inclusion on the panel was error because she displayed implied bias: (1) in favor of alleged victims; (2) by believing a person convicted of sexually assaulting multiple women should automatically receive a lengthy confinement sentence; and (3) by being predisposed to finding lack of consent. Here, the military judge did not err in rejecting an implied bias challenge. LCDR Mike shared a general sentiment about sex assault reporting, but her belief that during the "initial stages" of the investigative phase people "should err on the side of believing" a report and "should investigate"—had no relation to her understanding of the burden of proof at trial. Further, LCDR Mike stated she could set aside her views on lengthy confinement and be open to other sentences including no punishment. And she stated she did not feel compelled to vote for any sentence based on the charges. Taken in context, LCDR Mike's inclusion on the

panel would not cause the public to perceive unfairness in the military justice system.

In conclusion, these are not close cases of implied bias, and the military judge did not err when he declined to excuse the members.

Judge MAGGS, dissenting.

I would affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA). For the reasons explained by Judge Sparks in Part II of his separate opinion, the military judge did not err when he declined to excuse the challenged members for implied bias, and the NMCCA properly affirmed his decision. I therefore respectfully dissent.

I write separately to note that implied bias cases are difficult because our precedents require military judges to decide them using vague and questionable standards. To determine whether implied bias exists, a military judge must rely on nothing more than intuition to estimate "the risk that the public will perceive that the accused received something less than a court of fair, impartial members." *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008). Judge Stucky aptly described this test as "ambiguous" and raised serious questions about whether it is inconsistent with the Rules for Courts-Martial (R.C.M.) and the doctrines governing implied bias in other federal courts. *United States v. Woods*, 74 M.J. 238, 245-46 (C.A.A.F. 2015) (Stucky, J., concurring in the result). In addition, when applying this hazy test for implied bias, a military judge must follow this Court's "liberal grant mandate." *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015). Under this mandate, "if after weighing the arguments for the implied bias challenge the military judge finds it a close question, the challenge should be granted." *Id.* Senior Judge Sullivan properly questioned the liberal grant mandate on grounds that it also lacks express support in the R.C.M. and that a "qualitative standard of liberality is nearly impossible to ensure." *United States v. Downing*, 56 M.J. 419, 424-25 (C.A.A.F. 2002) (Sullivan, S.J., concurring in the result). And when decisions on implied bias are appealed, precedent imposes an unusual standard of review that is described as being " 'less deferential than abuse of discretion, but more deferential than de novo review.' " *Peters*, 74 M.J. at 33 (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006)). In his separate opinion in the present case, Judge Sparks

appropriately asks whether this Court has followed, and is even capable of following, this imprecise standard.

Given this situation, reconsideration of the test for implied bias, the liberal grant mandate, and the standard of review might benefit the military justice system. But until a party asks this Court to revisit our precedents—or until amendments to the Uniform Code of Military Justice or R.C.M. supersede them—we must simply do our best to apply their holdings. That is what the military judge and the NMCCA did in this case, and, in my view, their decisions were correct.